**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| IN RE: ) | |
| ) | **Case No. 05-05422-TLM** |
| MICHAEL ANTHONY STELLA, ) | |
| ) | **MEMORANDUM OF DECISION** |
| Debtor. ) | |
| _____ ) | |

**I.   INTRODUCTION**

Michael Anthony Stella ("Debtor") seeks confirmation of his second amended chapter 13 plan ("Plan").  Doc. No. 65.  The chapter 13 trustee, Bernie Rakozy ("Trustee"), objects to confirmation, claiming Debtor's Plan is not proposed in good faith and violates § 1322(b)(1)[1] by unfairly discriminating among unsecured creditors.  Further, Trustee does not think the Plan is feasible, and he complains Debtor has not cooperated in this chapter 13 case as required under § 521 including, for example, failing to produce bank and other records as requested.  *See* Doc. Nos. 69, 76, 79.[2]

Among the several confirmation issues presented, the Debtor and Trustee focus primarily on whether Debtor's Plan unfairly discriminates among nonpriority

---

[1] Unless otherwise indicated, references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, as it was codified prior to the effective dates of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.

[2] An unsecured creditor filed a written confirmation objection, raising the concerns that the Plan discriminated among similarly situated unsecured creditors, and arguing generally about Debtor's lack of good faith.  He and several other creditors have appeared at hearings and complained of Debtor's prebankruptcy conduct and the proposals made in this chapter 13 case.  No briefing was filed other than by Debtor and Trustee.  The Court has considered creditor input, though the thrust of this Decision addresses the authorities briefed by Debtor and Trustee.

MEMORANDUM OF DECISION - 1

unsecured creditors, and they have filed briefs taking substantially conflicting views of the authorities on the subject. While other objections to confirmation were raised under §§ 1325(a)(1), (3) and (6), the Court determines it appropriate to resolve the issue of allegedly discriminatory classification.

Having fully considered the testimony and arguments presented at hearing and in briefing, the Court concludes Debtor's Plan violates § 1322(b)(1) and cannot be confirmed. This Memorandum of Decision represents the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052, 9014.

## II. FACTS AND BACKGROUND

Debtor filed his voluntary, individual chapter 13 petition on October 14, 2005 commencing Case No. 05-05422-TLM. Doc. No. 1.[3] He is a contractor who currently specializes in landscaping, refinishing garage floors and constructing garage cabinets. However, Debtor's business used to focus on repairing and rebuilding concrete structures, like walkways and driveways, for residential and commercial clients. During the course of his pre-bankruptcy concrete restoration work, Debtor accumulated a host of dissatisfied customers, many of whom filed

---

[3] This is Debtor's second individual bankruptcy since 2002. *See* Doc. No. 19 at 2. He also testified he had a previous chapter 11 business bankruptcy in 1998.

MEMORANDUM OF DECISION - 2

priority and nonpriority unsecured claims in this case.[4]  This creditor contingent has actively opposed confirmation from the very beginning.[5]

Debtor's Plan proposes four payments of $1,958.00 (December, 2005 - March, 2006), 12 payments of $2,500.00 (April, 2006 - March, 2007) and 44 payments of $3,060.00 (April, 2007 - end of plan), for a total of $172,472.00 over 60 months.[6]  It also creates a special class of nonpriority unsecured creditors who would be paid in preference to other nonpriority unsecured creditors.  These creditors, Kelly Moore Paint ("Kelly Moore") and Concrete Construction Supply ("CCS"), hold checks presented by Debtor that were returned for insufficient funds ("NSF checks").  Under Idaho law, knowingly passing a worthless check can lead to fines and jail time.  *See* Idaho Code § 18-3106.  Debtor's Plan would pay Kelly Moore's $7,545.25 claim in full, while CCS would receive $1,635.64 of its total claim.[7]  Trustee projects the general class of nonpriority unsecured creditors would receive nothing under the Plan.

Absent the special classification, Trustee estimates nonpriority unsecured creditors would receive about a five percent dividend on their claims. Trustee also

---

[4] Some customers gave Debtor deposits on work that was never performed.  They have priority claims to the extent of their deposit up to $2,225.00.  *See* § 507(a)(6).

[5] Trustee has consistently objected to or refused to recommend confirmation of Debtor's plans for a variety of reasons as well.  *See* Doc. Nos. 24, 30, 47, 60, 62, 69, 70, 76.

[6] Trustee concedes creditors would receive more under the Plan than under a chapter 7 liquidation, and that § 1325(a)(4) is satisfied.

[7] Kelly Moore's entire unsecured claim is attributed to eight NSF checks.  CCS filed a single claim totaling $5,295.04, but did not segregate the $1,635.64 attributed to a single NSF check.

MEMORANDUM OF DECISION - 3

testified special classification of Kelly Moore and CCS was not necessary, in his opinion, to the Plan's success, nor would it enhance administration of the estate.

Debtor argues special treatment is essential because the risk of prosecution jeopardizes the Plan's success. At hearing, John Kent, District Sales Manager for Kelly Moore, testified the company's policy regarding NSF checks is to try and work out payment terms with the customer, before referring the matter to a collection agency and, ultimately, criminal authorities. Kent further testified if Debtor did not provide for full payment of Kelly Moore's claim, through the chapter 13 plan or otherwise, he would turn the matter over for prosecution. Kent recalled at least two NSF check cases Kelly Moore has turned over to authorities in the two years he has been with the company in this region. No testimony was offered as to CCS's policies regarding NSF checks.

## III.  DISCUSSION

### A.  Burden of Proof

Debtor has the burden of proof on all essential elements for confirmation. *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002). He must prove by a preponderance of the evidence that classification of creditors does not discriminate unfairly. *In re Bentley*, 250 B.R. 475, 477 (Bankr. D.R.I. 2000).

**B.     Unfair discrimination under § 1322(b)(1)**

A chapter 13 plan may discriminate among nonpriority unsecured creditors by placing them in separate classes with different treatment. Section 1322(b)(1) states in relevant part:

> Subject to subsections (a) and (c) of this section, the plan may – (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not *discriminate unfairly* against any class so designated[.]

(emphasis added).[8] As the statute makes clear, discriminatory treatment of unsecured creditors through classification is not prohibited – *unfair* discrimination is. *See In re Sperna*, 173 B.R. 654, 658 (9th Cir. BAP 1998).

There is a historical development of the law on the subject, both within and without this District, that must be reviewed to resolve the issue regarding classification of the NSF check holders in this case.

**1.     The *Wolff* test for analyzing "unfair discrimination"**

The Code does not define "discriminate unfairly," so Courts within the Ninth Circuit have generally employed a four-part test set out some 24 years ago in *In re Wolff*, 22 B.R. 510 (9th Cir. BAP 1982). Under the *Wolff* test, courts consider (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out the plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

---

[8] Section 1122, incorporated by reference, requires that only "substantially similar" claims can be placed in a class. *See* § 1122(a).

MEMORANDUM OF DECISION - 5

Restating the last element, does the basis for the discrimination demand this degree of differential treatment be imposed? *Id.* at 512. A debtor must satisfy all four elements to justify discriminatory treatment. *In re Limbaugh*, 194 B.R. 488, 492 (Bankr. D. Or. 1996).

### 2. Section 1322(b)(1), *Wolff*, and the District of Idaho

The approach to § 1322(b)(1) in this District has its roots in student loan debt. In *In re Harris*, 87 I.B.C.R. 45 (Bankr. D. Idaho 1987), a debtor proposed paying $2,500.00 in unsecured student loan debt ahead of claims of other unsecured creditors. The Court, applying *Wolff*, rejected the proposed treatment without explanation.[9] The Court came to the same conclusion the following year regarding classification of student loan claims, applying *Wolff* with brief analysis. *In re Mayer*, 88 I.B.C.R. 10 (Bankr. D. Idaho 1988). The Court applied *Wolff* in yet another student loan case in *In re Caster*, 91 I.B.C.R. 174 (Bankr. D. Idaho 1991), finding it unfair to classify student loans based solely on their non-dischargeable nature. *Id.* at 175. *See also Sperna*, 173 B.R. at 658 (BAP holding nondischargeable nature of student loans does not warrant separate classification).

### 3. *Hiner*, and then *Bird*, replace *Wolff*

This Court departed from the *Wolff* four-part test in *In re Hiner*, 161 B.R. 688, 93 I.B.C.R. 292 (Bankr. D. Idaho 1993). There, as in this case, the debtor

---

[9] *See also In re Eitemiller*, 149 B.R. 626, 629, 93 I.B.C.R. 25, 26 (Bankr. D. Idaho 1993) (adopting *Wolff* test for determining unfair discrimination in chapter 11 plans).

MEMORANDUM OF DECISION - 6

proposed to pay NSF creditors in preference to other nonpriority unsecured creditors. *Id*. The Court, citing *In re Iacovoni*, 2 B.R. 256 (Bankr. D. Utah 1980), rejected the classification and held:

> [C]hapter 13 prohibits all discrimination between unsecured creditors who have claims of equal legal status except where the statutes specifically authorize discrimination, as in 11 U.S.C. § 1122(b) and 11 U.S.C. § 1322(b)(1). In the instant case, discrimination between unsecured creditors to whom the debtor delivered insufficient fund checks and other creditors who were not delivered insufficient fund checks is not authorized by statute and is not fair discrimination. As holders of unsecured claims, all unsecured creditors hold the same legal rights against the debtor[.]

161 B.R. at 689, 93 I.B.C.R. at 292.[10]

Two years later, the Court issued *In re Bird*, 95 I.B.C.R. 39 (Bankr. D. Idaho 1995). The Court rejected *Wolff* and several other "tests"[11] in favor of an 8-factor analysis which represented "the best elements of the existing tests as factors relevant to the determination of fairness." *Bird,* 95 I.B.C.R. at 42. The factors are: (1) whether the discrimination substantially enhances or is necessary to the feasibility of the plan; (2) whether the discrimination reflects chapter 7 liquidation priorities; (3) whether the discrimination is otherwise contemplated by the Code; (4) whether the creditor discriminated against will receive more under the plan than it would in a hypothetical chapter 7 liquidation; (5) if the creditors as a whole

---

[10] *Wolff* specifically rejected adoption of *Iacovoni*. *Wolff*, 22 B.R. at 512.

[11] *See, McCullough v. Brown (In re Brown)*, 162 B.R. 506, 517-18 (N.D. Ill. 1993) (correlative benefit to creditor test); *In re Tucker*, 159 B.R. 325, 328 (Bankr. D. Mont. 1993) (legitimate interest test).

MEMORANDUM OF DECISION - 7

will receive more under the plan than in a hypothetical chapter 7 liquidation, will the discrimination encourage the use of chapter 13; (6) will the discrimination reduce the chances that the debtor will be forced to file bankruptcy in the future; (7) does the discrimination enhance an interest of the debtor which is otherwise protected or furthered by the Code; and (8) the extent of the discrimination. *Id.* The *Bird* Court went on to caution that "none of the above factors should be considered definitive. Nor should the number of factors indicating fairness or unfairness be determinative of the issue. Rather, the factors should be used on a qualitative case-by-case basis." *Id*.

### C.   *Bird* and *Wolff* as a framework

As an initial matter, the Court made it clear in *Bird* the strict prohibition on classification of NSF claims adopted in *Hiner* was no longer followed in this District. The Court has not applied *Hiner* since. It will not apply it in this case.

As to the *Wolff* four-part test, *Bird* found the second prong problematic and the third prong ("good faith") redundant to § 1325(a)(3). *Bird*, 95 I.B.C.R. at 40-41. All in all, *Bird* declared the *Wolff* test "of limited value in determining whether the plan 'discriminates unfairly.'" *Id.* at 41.

Other courts have taken issue with *Wolff* as well. One points out that *Wolff* has been "generally criticized" though "generally followed in the Ninth Circuit." *In re Gallipo*, 282 B.R. 917, 920 n.2 (Bankr. E.D. Wash. 2002) (citing Stephen L. Sepinuck, *Rethinking Unfair Discrimination in Chapter 13*, 74 Am. Bankr. L.J.,

MEMORANDUM OF DECISION - 8

341, 354-59 (2000)). The Seventh Circuit called similar four-part tests "empty except for point 2." *In re Crawford*, 324 F.3d 539, 542 (7th Cir. 2003) (Posner, J.). In fairness to *Wolff*-style formulations, Judge Posner admitted:

> We haven't been able to think of a good test ourselves. We conclude, at least provisionally, that this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek a result that is reasonable in light of the purposes of the relevant law, which in this case is Chapter 13 of the Bankruptcy Code; and to uphold his determination unless it is unreasonable[.]"

*Id. See also In re Bentley*, 266 B.R. 229, 239-40 (1st Cir. BAP 2001) (in establishing "the baseline against which to evaluate discriminatory provisions for fairness, we look to the principles and structure of Chapter 13 itself"); 8 Collier on Bankruptcy ¶ 1322.05[2] at 1322-18-19 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006) (noting variations of the *Wolff* test "have in common the theme that the debtor's personal preference for a classification is not sufficient; the justification must be based on reason and fairness.").

This Court is also sensitive to the problems in analyzing bankruptcy issues by utilizing lists of enumerated factors. As the Ninth Circuit Bankruptcy Appellate Panel recently observed:

> [S]uch lists are capable of being misconstrued as inviting arithmetic reasoning, we emphasize that these items are merely a framework for analysis and not a scorecard. In any given case, one factor may so outweigh the others as to be dispositive.

MEMORANDUM OF DECISION - 9

*In re Fjeldsted*, 293 B.R. 12, 24-25 (9th Cir. BAP 2003) (considering stay annulment factors); *accord Bird*, 95 I.B.C.R. at 42 (warning that "the number of factors" is not key, but that they should be applied in a "qualitative" manner).

The Court concludes § 1322(b)(1) determinations are committed to its informed discretion and should be decided, case by case, based upon competent evidence and cogent argument as to what is fair and reasonable in light of the purposes of chapter 13. The Court can certainly use *Wolff* or *Bird*'s enunciated factors to provide a framework for the § 1322(b)(1) analysis and to assist the Court in reaching an ultimate judgment on such matters.[12]

### D. Discrimination among classes of unsecured creditors in light of possible criminal prosecution

While the Court does not reflexively apply either the four or eight-part "factored" tests, the decisions discussed above are relevant. So, too, are decisions addressing particular types or genres of classification, as they sharpen focus and aid in applying factors to facts. Such cases exist in regard to NSF checks and criminal fines or threat of prosecution generally.

#### 1. Creditors holding NSF checks

Courts have generally found unfair discrimination in plans that provided for separate classification of NSF check creditors. *See In re Brigance*, 219 B.R. 486,

---

[12] The Court does not specifically reject *Wolff*. Precedent from the BAP "should be followed by Bankruptcy Courts in the absence of any contrary authority from the District Court." *In re Endicott*, 254 B.R. 471, 477, 00.4 I.B.C.R. 199, 201 (Bankr. D. Idaho 2000) (quoting *Harry Ritchie's Jewelers, Inc. v. Chlebowski (In re Chlebowski)*, 246 B.R. 639 (Bankr. D. Or. 2000)).

MEMORANDUM OF DECISION - 10

495 (Bankr. W.D. Tenn. 1998) (collecting cases, including *Hiner*, in which discrimination in favor of NSF check creditors was rejected, and concluding "[t]he issuance of 'worthless checks' does not provide a reasonable basis for separate classification and preferential treatment of the resulting claims.").

However, some decisions indicate such discrimination could be fair if the debtor provided credible evidence of the likelihood of criminal prosecution absent special classification. *See In re Riggel,* 142 B.R. 199, 204 (Bankr. S.D. Ohio 1992) (special classification could be appropriate "where there is an order of restitution as part of a sentence for criminal conviction."); *In re Stanley*, 82 B.R. 858, 859 (Bankr. S.D. Ohio 1987) (suggesting "pending criminal action or conviction" would provide basis for discrimination in favor of NSF check creditors); *In re Ratledge*, 31 B.R. 897, 900 (Bankr. E.D. Tenn. 1983) (suggesting the threat of incarceration could be a "*strong* reason to favor an unsecured claim.").

Outside the realm of NSF checks, several other courts have analyzed § 1322(b)(1) classifications where the debtor faced possible incarceration. An oft-cited case is *In re Limbaugh*, *supra*, in which the Oregon bankruptcy court articulated a policy argument against discrimination in these cases:

> By allowing debtors to separately classify the restitution debt this court would reduce the impact of the criminal sanctions imposed by the state court by requiring debtors' innocent unsecured creditors to subsidize Ms. Limbaugh's criminal sanctions. Two purposes of criminal sanctions are to deter and punish the wrongdoer. Both of these

MEMORANDUM OF DECISION - 11

> purposes are undermined when innocent creditors are required to help pay for a debtor's criminal sanctions.

194 B.R. at 493. *See also Crawford,* 324 F.3d at 543 (citing *Limbaugh* and declaring unreasonable or unfair plans in which general unsecured creditors are effectively made to pay debtor's restitution or fines); *In re Williams*, 231 B.R. 280, 282 (Bankr. S.D. Ohio 1999) ("The whole point of punishment would be avoided if the debtor could transfer the cost of this punishment to his other unsecured creditors.") (quoting *In re Ponce*, 218 B.R. 571, 575 (Bankr. E.D. Wash. 1998)).[13]

On the other hand, the obvious plan feasibility problems where the debtor is or is likely to be in jail have also been noted. *See In re Smalberger*, 157 B.R. 472, 477 (Bankr. D. Or. 1993), *aff'd*, 170 B.R. 707 (D. Or. 1994) (stating in dicta "it might be appropriate to prefer a claim for restitution or familial support if the alternative is that the debtor will be sent to jail and the plan will therefore fail."); *In re Haag*, 3 B.R. 649, 651 (Bankr. D. Or. 1980) (special classification allowed for past due child support because "[t]he obligation is one which can be enforced through contempt proceedings and the violation of which can result in criminal proceedings.").[14]

---

[13] Professor Sepinuck argues debtors who show a substantial threat of incarceration should be allowed to treat certain unsecured creditors differently because "[a]llowing such discrimination facilitates the debtor's fresh start, encourages use of Chapter 13, and most importantly, enhances the recovery of all creditors, even the disfavored ones." Sepinuck, 74 Am. Bankr. L.J. at 373-74 (2000). *But see*, Elizabeth Warren & Jay L. Westbrook, *Go Directly to Jail; Do Not Collect $200*, 22 Am. Bankr. Inst. J. 44 (January 2004) (criticizing creditors using a "pay or go to jail" approach with debtors in an effort to obtain a § 1322(b)(1) classification).

[14] Note, however, that these Oregon decisions were both rendered prior to *Limbaugh*.

MEMORANDUM OF DECISION - 12

## 2. Discriminatory treatment of traffic and other fines

Discriminatory classification of criminal traffic fines can be approved under certain circumstances according to *In re Gallipo*, 282 B.R. 917 (Bankr. E.D. Wash 2002). The *Gallipo* court applied *Wolff* and allowed the debtor to pay 100% of her outstanding criminal traffic fines, while paying nothing to the other unsecured creditors. *Id*. at 920-24. The debtor presented competent evidence her license would be suspended post-discharge if the fines were not paid in full in the plan. *Id*. at 920. In deciding whether the plan was proposed in good faith, the court found:

> The discrimination in Debtor's proposed plan is based on the debtor's need to have her driving privileges permanently reinstated. This will insure her continued ability to earn a living, which in turn is essential to her ability to repay any of her obligations.

*Id*. at 923. Judge Posner in *Crawford* cited *Gallipo* for the proposition that discriminatory classification should be strongly considered if "creditors *as a whole* will be better off and so will the debtor." *Crawford*, 324 F.3d at 543 (emphasis added).[15]

However, *Gallipo* ultimately denied confirmation because of another classification. The debtor sought to make partial payments on several shoplifting fines. Though not paid 100%, these fines still received preferential treatment

---

[15] *See* Sepinuck, *supra* at 372-78 n.171-73 (collecting cases and noting the easiest decisions "arise when the favorable treatment actually enhances the recovery of other claimants.").

MEMORANDUM OF DECISION - 13

compared to other unsecured creditors. The debtor claimed failure to do so could result in incarceration. *Id*. The court stated:

> "[I]t seems unlikely that the payment of $158.00, 13.7% of the debt, commencing fifty-seven months after the filing of the plan, would be sufficient inducement for the enforcement agency to forgo its incarceration remedy if it was truly considering imprisonment. There is no evidence to support the argument that incarceration of the Debtor is likely if this provision of the plan is not adopted.

*Id*. Thus, *Gallipo* ultimately approved discriminatory treatment of the traffic fines based on feasibility issues and the idea that both debtor and creditors generally would benefit from the classification. However, it denied discriminatory treatment of the shoplifting fines due to the lack of credible evidence that debtor would be criminally prosecuted absent the classification.

## IV.   DISPOSITION

Kelly Moore's district sales manager testified that, once private collection efforts fail, the company's policy is to turn NSF check cases over for prosecution. However, most of the NSF checks Debtor issued Kelly Moore are between 10 months and one year old. *See* Proof of Claim No. 18 (attachments). Kelly Moore had not pursued criminal remedies prior to filing. Furthermore, Mr. Kent could recall just two prior NSF cases Kelly Moore turned over for prosecution in the past two years. The rigor of the allegedly standard policy is questionable. Accordingly, Debtor did not establish that he faces a substantial threat of criminal prosecution as a result of issuing NSF checks to Kelly Moore. And, as noted

MEMORANDUM OF DECISION - 14

before, Debtor presented no evidence of CCS's policies or practices in dealing with customers who issue NSF checks.[16]

Given the evidentiary showing, classifying the NSF check claims to the detriment of the other nonpriority unsecured creditors would be fundamentally unfair in this case. The Trustee's objection is well taken on this record.

## V. CONCLUSION

The Court concludes the proposed classification of certain unsecured creditors is unfairly discriminatory and violates § 1322(b)(1). The Plan therefore cannot be confirmed. *See* § 1325(a)(1) (plan must comply with provisions of chapter 13 and other applicable provisions of Title 11).[17]

Confirmation of Debtor's present second amended plan is denied. Debtor will have 10 days from the entry of this Decision to submit an amended plan.

An order consistent with this Decision will be entered by the Court.

DATED: June 28, 2006



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[16] In addition, Debtor presented no evidence regarding the probability of prosecution, the usual and ordinary results of such prosecution, or whether jail time or fines are likely.

[17] Because this objection will be sustained and confirmation denied, the Court does not address the other objections to confirmation.

MEMORANDUM OF DECISION - 15